IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| REBECCA VEST | ) | |
| | ) | |
| v. | ) | No. 3:19-1021 |
| | ) | Richardson/Holmes |
| THE NISSAN SUPPLEMENTAL | ) | |
| EXECUTIVE RETIREMENT PLAN II | ) | |
| and NISSAN NORTH AMERICA, INC. | ) | |

## ORDER

Currently pending is Plaintiff Rebecca Vest's motion to supplement the administrative record and to take discovery from Defendants The Nissan Supplemental, Executive Retirement Plan II and Nissan North America, Inc. (collectively referred to as "Nissan"). (Docket No. 55.) Nissan has filed a response to the motion (Docket No. 59), Vest has filed a reply (Docket No. 60), and Nissan has filed a subsequent surreply. (Docket No. 61.)

For the reasons that follow, Plaintiff's motion (Docket No. 55) is GRANTED, although the Court RESERVES its ruling regarding the extent of permissible discovery pending additional discussion with counsel for the parties, as addressed in more detail below.

### I. BACKGROUND

**A. Facts Giving Rise to Action[1]**

This lawsuit involves Rebecca Vest's claim to benefits under The Nissan Supplemental, Executive Retirement Plan II (the "Plan"), which both parties agree falls within the purview of the Employee Retirement Income Security Act of 1974 ("ERISA"). Vest began working as an

---

[1] Unless otherwise indicated, the Court's recitation of the facts giving rise to the instant action is taken from the District Judge's memorandum opinion denying Defendants' motion to compel arbitration. (Docket No. 34 at 2-4.)

executive for Nissan in October 2009, which rendered her eligible to participate in and receive certain benefits pursuant to the Plan. The Plan contains a noncompete provision that bars an employee from working "either directly or indirectly … with any business or organization … with which [Nissan] competes." In September 2018, Vest resigned from her position and accepted a job with Bridgestone (Amended Complaint, Docket No. 41 at ¶ 20), a company that Vest did not consider to be a Nissan competitor.

Vest subsequently submitted a claim for benefits. On April 5, 2019, Nissan's Senior Vice President for Human Resources, Michelle Baron, responded with an "advisory position" – based on the position of Nissan's SERP Committee, which the operative complaint describes as a "subcommittee of the Plan's Administrative Committee" (Amended Complaint, Docket No. 41 at ¶ 31) – that required Vest to provide written confirmation that she was not "providing products and services to other [Original Equipment Manufacturers]," or otherwise forfeit any entitlement to benefits under the Plan. Vest provided such written confirmation, and additionally submitted a request for review of the advisory position. However, Nissan did not issue a decision regarding the request for review – at least, not pursuant to the Claims Procedure outlined in the Plan – despite being contractually obligated to do so within 60 days of the request.[2] After being stonewalled for several months, Vest sought arbitration with the American Arbitration Association. When Nissan refused to consent to this arbitration effort, Vest commenced the instant lawsuit.[3]

---

[2] The Claims Procedure contained in the Plan provides Nissan with an additional 60 days in the event of "special circumstances."

[3] In later filings, and apparently in lieu of directly communicating the status of Vest's request for review, Nissan claimed that it "has not reversed the decision" set forth in Baron's advisory opinion. (Docket No. 9 at 6.) Emails attached to the current motion indicate that in late October 2019, Senior Vice Presidents ("SVPs") with Nissan voted by a 4-1 margin to uphold the advisory opinion. As discussed in more detail below, these votes are not part of the procedures set forth in the Plan for handling a request for review of a denial of benefits, although Nissan maintains that this 4-1 vote represents its "final decision" for purposes of the instant ERISA action.

Nissan proceeded to file a "motion to dismiss or, alternatively, compel arbitration and stay proceedings," which was denied by the District Judge on December 28, 2020. (Docket No. 35.) Multiple findings in the District Judge's accompanying memorandum opinion are germane to the current discovery dispute. First, the District Judge found that Nissan "simply [was] not following [its] Claims Procedure" and thereby "failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." (Docket No. 34 at 18, 21.) Second, because Nissan failed to follow the Claims Procedure, the District Judge concluded that Vest had exhausted her administrative remedies under the Plan and was therefore permitted to continue pursuing federal remedies available under ERISA. (*Id*. at 20-21.) Finally, the District Judge found that although the term "advisory position" is not contemplated anywhere in the Plan, Baron's advisory position constitutes an initial "decision of denial" for purposes of Nissan's Claims Procedure. (*Id*. at 14-15 n.9.)

**B. Current Discovery Dispute[4]**

On October 24, 2020, the Court entered a second case management order that directed Nissan to "provide [Vest] with a copy of the administrative record of the proceedings" related to the advisory position that denied Vest's request for benefits. (Docket No. 29 at 2.) The order also permitted "additional discovery … limited to only discovery that would be permitted in arbitration," upon agreement by the parties or by further order from the Court. (*Id*.)

On December 11, 2020, Nissan provided Vest with what it claimed to be the full administrative record, which included a PowerPoint presentation (dated October 16, 2019), a copy of the Plan, the Baron advisory position, the email transmitting the advisory position, and a

---

[4] Unless otherwise indicated, the Court relies on Vest's description of the context giving rise to this discovery dispute, which is not contested in Nissan's responsive briefing.

document from Vest entitled "Appeal of Denial of Claim." On January 19, 2021, Vest replied to this production with a deficiency letter asserting that the materials provided were inadequate in three ways: (1) Nissan improperly redacted the names of "similarly situated" claimants; (2) Nissan failed to include two documents it allegedly provided to its SVPs in connection with Vest's claim; and (3) Nissan failed to include any documents that the Administrative Committee considered before issuing the advisory position, or "any other documents considered or generated by the Plan before October 2019."

On February 23, 2021, in response to the deficiency letter, Nissan provided a series of emails – all from October 2019 – purporting to document the votes of five Nissan SVPs in favor of finding that Vest had violated the noncompete provision in the Plan and was therefore not entitled to benefits. (Docket No. 57-3.) On March 26, 2021, Nissan provided additional documentation consisting of a memorandum drafted by a member of Nissan's legal department to the five SVPs (dated September 28, 2019) that set forth background information on Vest's claim, a summary of Vest's argument regarding her alleged entitlement to benefits under the Plan, the legal department's assessment of the SERP Committee's decision, an explanation of the role of the SVPs in the review process, and a brief discussion of Nissan's "prior treatment of similar requests" by former executives. (Docket No. 57-4.) In the "prior treatment of similar requests" section of the memorandum, counsel describes six instances over the previous five years involving four former executives whose entitlement to benefits under the Plan was scrutinized based on their pursuit of employment with Nissan competitors. An "attached chart" referenced in the discussion was not included with the March 26 production, although counsel for Nissan advised counsel for Vest that the chart was included in the PowerPoint presentation that Nissan initially produced. Nissan rejected Vest's requests for any additional information.

The parties initially filed a joint discovery dispute statement but withdrew the filing following the Court's order directing that counsel provide additional briefing via a motion to compel from Vest and a response from Nissan. (Docket No. 54.) Vest then filed the instant motion, which asks the Court to: (1) require Nissan to produce a copy of the full, unredacted administrative record; and (2) permit Vest to conduct discovery related to deficiencies in the administrative record, the Plan administrator's compliance with ERISA regulations, and possible conflicts of interest.

### C. Parties' Arguments

Vest's arguments are relatively straightforward. First, she claims entitlement to a complete copy of the administrative record on which the SERP Committee's decision was based, including all information considered by the Committee in formulating the advisory position, any records generated by Nissan between April and September 2019 in connection with Vest's claim, and any documents considered by the individual who created the PowerPoint presentation included as part of Nissan's December 2020 production. Second, she argues that limited discovery is appropriate in light of the absence of evidence demonstrating the deliberations of the SVPs in reaching their decision, the District Judge's previous finding that Nissan's Plan Administrator did not follow its own Claims Procedure, and the inherent conflict of interest created by Nissan's administration and funding of the Plan.

Nissan counters that the documents it has provided to Vest comprise the entire administrative record, and that she is not entitled to documents other than those documenting their respective votes in October 2019. Nissan also asserts that the operative complaint fails to allege any procedural challenge that would except Vest from the "otherwise firm prohibition on discovery in ERISA disputes." (Docket No. 59 at 6.) Nissan further claims that because the District Judge has already determined that it did not comply with ERISA's procedural regulations, Vest should

5

not be permitted to conduct discovery regarding such noncompliance. Finally, Nissan argues that Vest has failed to show how discovery on this topic would be productive to resolution of this lawsuit.

## II. ANALYSIS

### A. Legal Standards

Parties to federal litigation are allowed to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). However, an ERISA claimant is not typically entitled to discovery of matters beyond the underlying administrative record except in limited circumstances. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) (Gilman, J., concurring). This general proscription is thought to serve the primary goal of ERISA, which is to "provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously." *Perry v. Simplicity Eng'g Div. of Lukens Gen. Indus., Inc.*, 900 F.2d 963, 967 (6th Cir. 1990). Nevertheless, there are notable exceptions for situations "when consideration of [outside] evidence is necessary to resolve an ERISA claimant's procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins*, 150 F.3d at 618.

### B. Precedential Background

District courts in this circuit have been forced to wade into the murky pool of legal precedent concerning when such extrinsic evidence in an ERISA action is "necessary," and what the boundaries of any associated discovery should be. *See Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 510-13 (W.D. Ky. 2010) (detailing the varied history of ERISA discovery disputes decided post-*Wilkins*). Courts have tended to follow two different tacks for determining when discovery is appropriate in an ERISA action: one requiring that the claimant do more than merely

allege the existence of a procedural irregularity, due process violation, or bias; the other requiring no threshold showing at all. *See Bird v. GTX, Inc.*, No. 08-2852-JPM-CGC, 2009 WL 3839478, at *2 (W.D. Tenn. Nov. 13, 2009) (collecting cases). Courts faced with discovery requests in ERISA cases thus assume the primary task of deciding what prerequisites, if any, a claimant must meet before obtaining leave to conduct discovery. *See Mullins*, 267 F.R.D. at 510 (noting the "essential question" is "what must a plaintiff in an ERISA [action] show in order to embark upon such a foray").

In 2008, the Supreme Court provided some guidance in this regard via its opinion in *Metropolitan Life Ins. Co. v. Glenn*, which held that when an employer occupies the dual role of administrator and payor in connection with an employee benefit plan, a *per se* conflict of interest arises and should be weighed by the district court in considering a discretionary benefit determination. 554 U.S. 105, 114 (2008). Notably, however, the Supreme Court did not address discovery and made clear that district courts are not expected to employ a rigid standard as part of any analysis:

> Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict. In principle, as we have said, conflicts are but one factor among many that a reviewing judge must take into account. Benefits decisions arise in too many contexts, concern too many circumstances, and can relate in too many different ways to conflicts — which themselves vary in kind and in degree of seriousness — for us to come up with a one-size-fits-all procedural system that is likely to promote fair and accurate review. Indeed, special procedural rules would create further complexity, adding time and expense to a process that may already be too costly for many of those who seek redress.

*Id.* at 116-17. Although the *Glenn* decision does not directly discuss the impact of its opinion on discovery, courts have generally acknowledged a moderation of the stringent discovery prohibition in ERISA cases. *See Mullins,* 267 F.R.D. at 512 (noting the conclusion of district courts in Kentucky and Tennessee that *Glenn* "liberalized discovery to a degree" in ERISA cases). *See also*

*Pemberton v. Reliance Standard Life Ins. Co.*, No. CIV. A. 08-86-JBC, 2009 WL 89696, at *2 (E.D. Ky. Jan. 13, 2009) ("Even though the Supreme Court did not expressly alter the rules for discovery in an ERISA conflict-of-interest case, they effectively did so by recognizing the inherent conflict and requiring courts to consider it as a factor when deciding whether the plan administrator abused its discretion.").

Following *Glenn*, many courts in this circuit began recognizing the ERISA claimant's diminished burden in gaining access to discovery. *See, e.g., Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 411-12 (W.D. Ky. 2015) ("[A]n ERISA plaintiff may venture outside the record, when the claimant makes a satisfactory allegation of a violation of due process or bias by the plan administrator."); *Kinsler v. Lincoln Nat. Life Ins. Co.*, 660 F. Supp. 2d 830, 836 (M.D. Tenn. 2009) ("[W]here … a plaintiff has alleged an inherent conflict of interest … discovery into this alleged conflict of interest is proper, even if the plaintiff has not made an initial threshold showing of bias beyond alleging the existence of this type of conflict of interest."). This does not open the normal discovery spigots to the claimant, however, as any permitted discovery into an alleged procedural defect "must be strictly and carefully circumscribed to the needs of the particular case." *Myers v. Prudential Ins. Co. of Am.*, 581 F. Supp. 2d 904, 914 (E.D. Tenn. 2008). Nonetheless, the need for discovery in ERISA cases increases where the defendant serves as both administrator of the subject plan and payor of benefits, and "increases even more" when the plan administrator argues that its benefits decision is subject to the substantially deferential "arbitrary and capricious" standard of review. *Id.* (citing *University Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 847 n.4 (6th Cir. 2000)).

**C. Redactions**

The Court first addresses Vest's argument that Nissan improperly redacted portions of the administrative record. Specifically, Nissan has redacted the names of other "similarly situated

employees" in the record (Docket No. 55 at 4), which it explains by referencing an opinion from the Western District of Tennessee emphasizing the importance of redacting sensitive information such as "personal identifiers." (Docket No. 59 at 3.) But the names of individuals are not generally considered to represent "personal identifiers," and Nissan provides no other support for its decision to redact employee names as a matter of course. Moreover, as noted by Vest, not only does the cited case not endorse the use of redactions for employee names, but the district court actually ordered the defendants to remove its redactions from the administrative record "to allow the plaintiffs a fair opportunity to challenge the defendants' arguments." *Morrison v. Regions Fin. Corp.*, No. 10-2843-A/P, 2012 WL 13168399, at *6 (W.D. Tenn. Mar. 13, 2012). Vest contends that such information is necessary to determine whether Nissan correctly categorized these other employees as "similarly situated" (Docket No. 55 at 7), an assertion that is not contested in any of Nissan's responsive briefing. Because Nissan has not justified its redaction of the names of the employees, the Court will require Nissan to remove such redactions from the administrative record.

### D. Discovery

For multiple reasons, the Court concludes that Vest is entitled to some form of discovery. First, Nissan's argument is premised on a misconstruction of the district court's obligations in ERISA actions. Nissan suggests that sanctioning limited discovery of the anomalous actions by which Nissan denied Vest's claim to benefits would improperly transport the Court into the role of plan administrator. To the contrary, even in cases where significant discretion is vested in the plan administrators, the district courts "do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005). The opinion Nissan primarily relies on in fact demonstrates the curative and active role a district court may be required to play in ERISA cases, particularly those involving

9

disputes over the completeness of the administrative record. *See Kalish v. Liberty Mut./Liberty Life Assur. Co. of Bos.*, 419 F.3d 501, 511 (6th Cir. 2005) (reversing district court's finding that evidence of depression that was not before plan administrator could not be considered part of the administrative record).

Second, although not discussed anywhere in its briefing, Nissan has argued that the more deferential "arbitrary and capricious" standard applies to the Court's review of Vest's claim. (Docket No. 17 at 4-6.)[5] This standard applies when the sponsor of the subject benefits plan bears the risk of paying claims and appoints the body designated to serve as final arbiter of the claims, thus giving rise to a situation that requires district courts to be "particularly vigilant" and guard against the potential for abuse caused by "self-interested decision-making." *University Hospitals*, 202 F.3d at 847 n.4. As previously discussed, courts have interpreted this admonition to mean that discovery is especially appropriate in cases involving both a defendant acting in a dual administrator/payor role and the arbitrary and capricious standard of review. *Myers*, 581 F. Supp. 2d at 914. Case law cited in Nissan's own briefing supports this notion:

> Hartford is correct that, where a case is adjudicated under a *de novo* standard, discovery on the issue of conflict of interest is irrelevant. ... Hartford cannot ignore, however, that it opposes [claimant's] advocacy for application of the *de novo* standard of review. If it stipulated to the *de novo* standard, the issue would be foreclosed; however, the possibility that Hartford might prevail in establishing the arbitrary-and-capricious standard as the applicable standard of review gives rise to a legitimate interest, from [claimant's] perspective, in preparing to challenge Hartford's coverage decision under that standard as the result of bias.

---

[5] Nissan actually advocates for an "abuse of discretion" standard of review, which is synonymous with "arbitrary and capricious" in the ERISA context. *See Jaeger v. Matrix Essentials, Inc.*, 236 F. Supp. 2d 815, 823 n.3 (N.D. Ohio 2002) (an attempt to distinguish these two "interchangeabl[e]" standards "would be like split[ting] semantic hairs") (internal citations and quotations omitted).

*Ruhe v. Hartford Life & Accident Ins. Co.*, No. 1:20-CV-00145-GNSHBB, 2020 WL 6946576, at *3 (W.D. Ky. Nov. 25, 2020). Therefore, at a minimum, the Court must take special care to avoid foreclosing a claimant's opportunity to uncover self-dealing based solely on slavish adherence to a policy that generally disfavors discovery in ERISA disputes.

Third, and most integral to the Court's ruling, Vest's discovery efforts are entirely reasonable in light of Nissan's failure to follow the terms of the Plan in processing her claim. In addition to issuing an "advisory position" – a process not contemplated in the Plan – Nissan relied on the votes of SVPs to uphold this initial determination in lieu of the Plan's prescribed method of review for benefit decisions. Nissan opposes discovery of information considered in connection with the advisory position by emphasizing that the Court's scope of review is limited to "all information considered by the plan administrator in evaluating the merits of the claimant's appeal." (Docket No. 61 at 2) (quoting *Thacker v. Schneider Elec. USA, Inc.*, No. CIV.A. 12-235-KSF, 2013 WL 488945, at *3 (E.D. Ky. Feb. 7, 2013)). According to the terms of Nissan's own Claims Procedure, however, the SERP Committee *is* the body designated to review an initial claim denial. (Docket No. 34 at 15.) Because Nissan failed to issue a final decision pursuant to the process delineated by its own Plan, and instead relied on a method of review not contemplated by the Claims Procedure, the possibility remains that the advisory position represents the final decision of the plan administrator. It is thus far from certain that the limited information provided to Vest to date constitutes the entire administrative record. The darkness that continues to hover over Nissan's denial of Vest's claim would likely be purged by shedding light on the evidence considered in connection with the SERP Committee's determination, which is purportedly contained in Baron's advisory position. Limited discovery regarding this information is therefore appropriate and warranted. *See Jones v. Allen*, 933 F. Supp. 2d 1020, 1025 (S.D. Ohio 2013)

(noting that when it is unclear what records a plan administrator has considered, the district court may permit discovery into "whether a complete administrative record has been assembled, whether any relevant material was not submitted to the Plan Administrator, and what was considered by the Plan Administrator") (citations omitted).

Finally, none of the other cases cited in Nissan's briefs persuades the Court that discovery should be prohibited in the instant case. For example, in an unpublished decision that Nissan erroneously describes as "controlling law" (Docket No. 59 at 10),[6] a district court held that the "bare existence of [] a conflict of interest, standing alone, cannot justify discovery …" *Mellian v. Hartford Life & Acc. Ins. Co.*, No. 14-10867, 2014 WL 7366104, at *3 (E.D. Mich. Dec. 24, 2014). Even assuming that this heightened standard requiring more than a mere allegation of procedural irregularity, due process violation, or bias applies to the instant matter, Nissan's failure to follow its own Claims Procedure has already been established, including Nissan's decision to "inject[] unwarranted steps into the procedure" by which Vest was denied benefits. (Docket No. 34 at 18.) Thus, unlike the *Mellian* claimant's inability to "identif[y] any irregularity" in the "entirely routine" process by which the subject defendant selected a medical professional to conduct a file review, 2014 WL 7366104, at *3, Vest can and has pointed to specific irregularities in the process yielding a denial of her claim, most notably that Nissan conflated its Claims Procedure with an entirely unrelated provision in the Plan. (Docket No. 34 at 14-19).

---

[6] The court in that very case specifically highlighted the "somewhat obscure" role of discovery with respect to conflicts of interest and noted that case law regarding this subject "remains unsettled." *Mellian*, 2014 WL 7366104, at 3 (citing *Price v. Hartford Life & Accident Insurance Co.,* 746 F. Supp. 2d 860, 865 (E.D. Mich. Oct.12, 2010)). *See also Cohn v. W. & S. Fin. Grp. Long Term Incentive & Retention Plan I*, No. 1:19-CV-943, 2020 WL 7028469, at *3 (S.D. Ohio Nov. 30, 2020) ("The parties recognize that courts within the Sixth Circuit are divided on whether discovery outside of the administrative record is permissible upon only an allegation of bias or a conflict of interest.").

The existence of procedural irregularities also negates Nissan's reliance on the Sixth Circuit's decision in *Guest-Marcotte v. Life Ins. Co. of N. Am.*, which noted that an ERISA claimant is entitled to certain discovery if she "provide[s] sufficient evidence of bias – *or of any procedural irregularity* – to justify prehearing discovery," 730 F. App'x 292, 304 (6th Cir. 2018) (quoting *Likas v. Life Ins. Co. of N. Am.*, 222 F. App'x 481, 486 (6th Cir. 2007)) (emphasis added), as well as two unpublished district court decisions referenced in Nissan's surreply. *See Ruhe*, 2020 WL 6946576, at *5 (denying motion for leave to conduct discovery based on claimant's failure to offer anything other than conclusory allegation of bias); *Mitchell v. Unum Life Ins. Co. of Am.*, No. 1:18-CV-94, 2019 WL 7758859, at *4 (E.D. Tenn. Sept. 30, 2019) (denying motion to conduct discovery based on claimant's broad contention that defendant "has policies and procedures in place institutionalizing a biased claims-handling process"). The same applies to Nissan's reliance on an unpublished order denying a claimant's request for discovery based on an alleged conflict of interest where there was no dual administrator/payor role. *See Alekna v. AT&T Serv.*, 2018 U.S. Dist. LEXIS 40063 (N.D. Ohio Mar. 12, 2018). Because it is undisputed that an inherent conflict of interest exists in this case, the *Alekna* decision has no bearing on the current dispute.

In sum, the Court finds that additional, albeit limited, probing into Nissan's handling of Vest's claim is warranted. As a result, Nissan's request for a protective order (Docket No. 59 at 10) is denied.

### E. Scope of Permitted Discovery

Having determined that discovery is appropriate in the instant matter, the Court must define the parameters of Vest's discovery foray. Discovery in ERISA cases "must be tailored to facilitate the prompt resolution of the dispute." *Kasko v. Aetna Life Ins. Co.*, 33 F. Supp. 3d 782, 786 (E.D. Ky. 2014). In cases involving a procedural challenge, discovery is "confined to the procedural

challenge that warrants the discovery, and evidence outside the record may be considered only insofar as it relates to the procedural challenge." *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*, 328 F.R.D. 485, 495 (S.D. Ohio 2018). As always, the Court must account for the "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

As discussed above, the Court will require Nissan to supplement its production of the administrative record by providing an unredacted version of the "similarly situated" employees identified therein. Nissan shall produce such information within seven (7) days of entry of this order. Additionally, because the SVPs' respective votes regarding the noncompete provision is not part of the Claims Procedure delineated in the Plan, and because the SERP Committee's initial denial – as reflected in Baron's advisory position – appears to be the only determination made as part of the "administrative appeals process," the Court will require Nissan to produce any information "submitted, considered, or generated" in the course of the SERP Committee's benefit determination, as required by 29 C.F.R. § 2560.503-1(l) and (m). Nissan shall produce such information within 21 days of entry of this order.

The Court is mindful of its obligation to "strictly and carefully circumscribe[]" discovery to the needs of the case, *Myers,* 581 F. Supp. 2d at 914, and will therefore reserve its ruling on the remaining contours of permissible discovery, including Vest's attempts to probe Nissan's compliance with ERISA procedural regulations – in particular its "interpretation of [the] definition of Competing Company," (Docket No. 55 at 9) – as well as Nissan's potential conflict of interest, until counsel for the parties are heard at an upcoming conference call currently scheduled for

June 22, 2021 at 9:00 a.m. Counsel for Vest should be prepared to describe with specificity the proposals generally outlined in their brief, including any requests to propound written discovery or depose any individuals. (Docket No. 55 at 9-11).[7] Counsel is directed to keep any such proposals as narrowly tailored as is practicable. Failure to do so will result in the Court drawing the lines more finely than Vest might like.

To summarize:

(1) Nissan SHALL produce unredacted versions of the information described above **within seven (7) days of entry of this order**;

(2) Nissan SHALL produce all information "submitted, considered, or generated" in connection with the advisory position **within 21 days of entry of this order**; and

(3) The Court RESERVES its ruling on the remaining discovery proposals until further discussion with counsel for the parties has occurred at the upcoming conference call on June 22, 2021.

(4) The Court DENIES Nissan's request for entry of a protective order at this juncture. (Docket No. 59 at 10.)

It is SO ORDERED.

BARBARA D. HOLMES
United States Magistrate Judge

---

[7] For example, Vest seeks to depose Baron regarding her personal knowledge of Nissan's handling of the claim. (Docket No. 55 at 11 n.7.) Counsel should therefore be prepared to describe the specific lines of inquiry they intend to pose to Baron.